Good morning, Your Honor. I am Ralph Palumbo and I represent the Pellet FMC in this matter. I'll reserve a couple of minutes for rebuttal. All right. First, it's clear in Washington that if the clause at issue is simply a merger and integration clause, then it would not bar an action for fraudulent inducement of the settlement agreement. And a reading of that clause, I think, indicates that that's precisely what it is. First, it's labeled full integration amendment in writing. And the first sentence says that this is the entire agreement and these terms replace any and all prior representations and agreements of the parties. So the classic lawyer, these are the terms of our deal. They're the only terms of our deal. The second sentence says the parties acknowledge they have not relied on any promise or representation not contained in the agreement, which is just another way of saying there's nothing outside the deal we made. There's nothing else that's part of this deal. And the third clause or the third phrase simply says this deal can only be amended by an agreement in writing signed by the parties. So we think that a fair reading of that clause indicates that it's an integration clause and not a no-reliance clause. Even if it is a no-reliance clause, Washington has a very strong policy that fraud vitiates everything. And the cases out of the Washington Supreme Court that have dealt with clauses that the court characterizes as no-reliance clauses still recognizes that in the face of a no-reliance clause, if, if parties. Well, the district court specifically found that the agreement did not require a disclosure. I'm not sure I understand your question, Your Honor. Well, my understanding is that the district court found that the agreement between your client and the opposing party did not require them to affirmatively disclose what they had. Is that right? I think that's right, and we disagree with that, Your Honor. But you can't have fraud if the district court is correct and there was no obligation to disclose, then the failure to disclose certainly can't be fraud. Well, that's, again, I'm not sure I understand your question, but there was a, the discovery rules, the discovery rules impose an affirmative obligation to disclose. The rules that apply. We're talking about the settlement, though. We're talking about, you're going back to what happened earlier in the lawsuit when you claimed they should have disclosed this, that, or the other thing. Well, then isn't that all subsumed in the settlement? Otherwise, everyone in settling a case would be in a position later to come by and say, well, you know, when he answered this question in deposition five years ago, or when he did this and this and this and this, you'd never have a settlement, would you? You'd never hold water? But the Washington courts, Barnett v. Cobb, Normil v. Dennison, Dietrich v. Rice, all deal with the situation where there is a no-reliance clause, and they say where the party seeking to challenge the agreement can offer evidence, and the standard, as you all know, is our evidence has to be believed, plus reasonable inferences from their evidence. And the burden that we have to meet in order to challenge this settlement agreement for fraudulent inducement is we have to come forward with evidence to prove each of the nine elements of fraud, and we have to meet the clear and convincing standard of fraud. And so what we're saying is the balance that the Washington courts have struck in this case, which is a balance between a policy to have settlements be final, a policy of honest disclosures and compliance with the rules of our judicial process, and a policy that a party who is deceiving the other party cannot put a clause in the contract, denying the other party the right to challenge that fraud, is the right balance. And here we have an extreme situation of abuse of our judicial process. You're saying that there was a positive obligation to reveal everything that they knew? No. I'm not saying that at all, Your Honor. What we are challenging here is the cover-up, which was fraudulent. And in this case, the evidence shows that they lied in all of their responses to written discovery. They lied under oath in depositions. They created fake documents to support their cover-up. And so there was this massive abuse of the discovery process to cover up what they had done in order to induce a settlement that was less favorable than it would be without the cover-up and with a settlement that would permit them to continue with their unlawful use of the drawings that they had taken from FMC. Are you supposed to believe what your opposing party says? That, I think, Your Honor, is the reason that fraud initiates, is that here we have a case of extreme abuse of the judicial process. What we relied upon is the integrity of the judicial process. So there may be a case where there are innocent failures to disclose. There may be a case where people simply answer it incorrectly. But what this fraud rule does that's recognized by the Washington Supreme Court, it sets a sufficiently high bar so that in order to challenge the settlement, we have to come forward with evidence that false statements were made, that they were material, that the party making the statements knew those statements were false, they were made with the intent to cause us to act, that we didn't know the falsity of the statements, that we relied and the reliance was reasonable. Counsel, are you familiar with the recent Kwiatkowski case in Washington? I am, Your Honor. That specifically says that, you know, when you have a settlement agreement, you can't rely on the statements that's made by the adversary when that's the very basis of the settlement agreement. So if you're relying on the statements that you say were fraudulent to settle the case, you can't reasonably rely on any, you know, statements that are made. How do you get around that language? Kwiatkowski is the guardianship case, if I'm correct, Your Honor, and the claim there was that there was an affirmative duty to put documents in the guardianship file, and you had a release in that case that was much broader than it is in this case. And what we say we're entitled to rely upon is the integrity of the judicial process, that if a party abuses the judicial process to the extent that we can meet a fraud showing, then that settlement gets set aside. And we've cited cases in the brief where the parties are sophisticated and the courts still strike down a settlement agreement where there's been fraud to induce the settlement agreement, where there's been a cover-up. And the cases in Washington that recognize this rule, Dietrich, Barnett, Normeal, all are situations where there's a no-reliance clause and it's struck down because it's induced by fraud. And the cases that recognize a no-reliance clause, when it's clear of no-reliance clause, first those clauses are much broader and usually very, very specific. Usually those clauses say the parties are not relying upon any statement. They have no right to trust statements or representations made by the other side. But, for example, in the Normeal case, there the wife signed a release that said that she was expressly not relying upon the accuracy of the representations. The court still struck it down because she was able to meet and go to trial on the issue of fraud. So we're not saying we win at trial. We're saying that in this case where we have brought forward evidence and inferences that can be drawn from those evidence that where reasonable minds could disagree about whether or not we were induced to enter into this settlement, that's an issue for the jury. What was the name of that last case you just cited? The cases are all cited in our brief. Normeal v. Dennison, which is the husband and wife case. Barnett v. Cobb. Barnett v. Cobb is a case where this was a property transaction and the release said that the person Those are settlement cases. I'm sorry? Those are settlement cases. Is it a settlement agreement? We don't have a single case where there's a no-reliance clause in a settlement agreement. I think Kiyokowski may be the closest one to it, but the cases that are recognizing the no-reliance clauses are stock purchase agreements. But the specific question was, was Barnett v. Cobb a settlement agreement case? I think there was. That was not a settlement agreement. That was a purchase and sale of a property contract. Kiyokowski is kind of the only settlement. I think Kiyokowski, Your Honor, is the only settlement. That goes the other way. It does not converge. It goes the other way, but in that first place, the release is broader than it is here. Admittedly, it's a little more specific. I wouldn't say it's broader. It's more specific. It's more specific. And I think that we believe that if the Washington court would recognize a no-reliance clause as barring an action for fraud, it would have to be a very specific clause. What you're asking us to do is to extend Washington's fraud exception and distinguish Kiyokowski. Well, I think Kiyokowski is distinguishable, Your Honor. Isn't that what you're asking us to do? I think that if you look at it, Kiyokowski does not overrule Dietrich or Barnett and nor Meehl. Well, they're too different. They don't apply to the same issue. Well, I think our view, Your Honor, is that Kiyokowski is distinguishable for a variety of reasons. I understand. I'm not arguing with you. I'm just saying what you're asking us to do is to extend Lakosin reasoning, which is another case you cited. Right. Lakosin is a case of integration. Right, right, right. Right. And distinguish Kiyokowski on the basis that you believe the specific terms there were more pointed than they are here. Yeah, I think you can get there in a variety of ways, as I said earlier. I think there's no question that if that is an integration clause, which we believe it is, and if you look at all of the circumstances around the agreement, this is a settlement agreement. It's a lawsuit. And the proposition that PES wants to offer is that when we're settling a lawsuit, we're not relying upon any of the discovery. If you cannot rely upon the information you get in discovery in a lawsuit, what do you rely upon in order to settle a case? Well, you have sophisticated lawyers who are going in, and there certainly were sophisticated lawyers on both sides in this matter. They know the risks versus the benefits of putting this kind of clause in a settlement agreement. They put it in there not just because they want it in there. They put it in there because there's a benefit to their client because they don't want the other side to come back later and say, wait a minute, you know, they knew about something that we just found out about, and they didn't disclose it, and so we want to vitiate the agreement, and we want to do this, that, and the other thing. I mean, there's a risk involved, obviously. Any time you settle this, as Judge Rawlinson pointed out, and if you enter into that type of agreement, aren't you assuming that risk for better or worse? Well, if you extend Kiyokowski, had that clause been labeled no-reliance clause and it said in clear terms the parties may not rely on any representations or discovery materials or any other matters adduced in this lawsuit, you could take Kiyokowski and say, if that was the clause in our settlement agreement, that is sufficiently specific, and the Washington court would recognize it. But that's not what that clause is. We read that clause to be an integration clause. It's at the end of the contract exactly where an integration clause would be. It says this is the whole agreement. There are no other terms. Very usual. There's nothing outside the agreement applies, and you can't change the terms of this deal. That's the way we read it, and I think that's the fair reading. I want to reserve a half a minute. But if the judge has a question. Yes. Basically speaking, what we're talking about here is a situation where we're bound by Kiyokowski, right? Yes, but you also can look to separate. I'm not finished. We're bound by Kiyokowski. The district court found that the Kiyokowski case controlled. Given the language of this particular agreement, your contention is that the district court overread Kiyokowski and that this particular agreement is not specific enough to vitiate your ability to come back under fraud and that Kiyokowski, therefore, does not apply. Right? Well, I may be mistaken, Your Honor. I don't think Kiyokowski was decided until more recently, so I don't think that the district court had the Kiyokowski case. I'm talking about what we're doing now. The other way to do it would be to certify this issue to remand and certify the issue to the Washington Supreme Court for clarity if there is any lack of clarity. Thank you. All right. Thank you. Good morning, and may it please the Court. I'm Seth Wilkinson. Excuse me, I thought we drove your appellate out of the courtroom. I was going to say, did he leave us? He's so disappointed. He's walking out the back door. He's back now. It wasn't that bad, Captain. My name is Seth Wilkinson, and I represent the appellees Jim Edwards and P.E.S. As a starting point, I think it's useful to remind ourselves of a few facts about this case. FMC is a sophisticated, multinational corporation. It hired excellent counsel to bring and file a lawsuit accusing P.E.S. of copying its drawings and using its trade secrets. In that litigation, FMC testified under oath in 30b-6 depositions that the evidence it had discovered in the case and a computer program that it had run, quote, proved that P.E.S. had taken its trade secrets. It testified in that deposition that the evidence made it, quote, very obvious that P.E.S. had taken its trade secrets. Well, but your Mr. I forgot his name. Wilkinson. Yeah, he took the position that both he and the other gentleman involved here committed flat-out perjury in suggesting that they didn't have the drawings, they didn't have the secrets. That's right, Your Honor, and FMC I'm saying they shouldn't have relied on that perjury because they had their own evidence proving otherwise, so they should have known flat-out immediately right then and there it was perjury. Well, as a starting point, I'm saying they didn't rely on it because their 30b-6 witness testifying on behalf of the corporation said that the corporation believed that Darren Waddles was lying. That question was put to him point-blank in the 30b-6 deposition, and he said the evidence points to the fact that Darren Waddles is lying and that they stole the drawings. And they settled the case anyway. And they settled the case anyway, and they agreed to go ahead, and as they were going through settlement negotiations, FMC's lawyers wrote two letters talking about what a settlement agreement would look like, and in both those letters, FMC's lawyers specifically said that FMC continues to believe that PES took its trade secrets. They worked out a settlement agreement. It provided a number of benefits to FMC. It provided royalties on the parts that PES had sold, and it precluded PES from selling certain parts that FMC manufactured. One element of the settlement agreement that PES negotiated for was a no-reliance clause, and it specifically says that FMC had, quote, not relied on any representation outside of the agreement. Where is that in the record? It's at the excerpt of Record 301. Couldn't be clearer, Your Honor. Where is that? Which section is that in? Six point what? Oh, in the integration clause you're saying? That's right. It's in the integration. They have not relied on any promise, representation, or warranty, not a containment disagreement. That's exactly right, Your Honor. What they're calling the integration clause you're calling a reliance clause. It's not exactly that. There are two sentences in that paragraph. The first one we would agree is an integration clause. Under Washington law, of course, you give every sentence meaning, particularly under the Wagner decision where the parties are sophisticated and they've negotiated a contract over time. So the first sentence is an integration clause. We have to give meaning to the second sentence of that provision, and the second sentence says that the parties have not relied on any representations outside of the agreement. Is that, under Washington law, is that typically included in an integration clause or a separate reliance clause, language like that? I think parties are free to structure them however they want when you have them. That's not the question I asked you. The question I asked you was under Washington law. Is that typically included in an integration clause or is there a separate reliance provision? I don't think there's any Washington decision saying one way or the other. I think in practice it's done both ways, Your Honor. In this case, FMC, FMC has filed a claim that requires it to contradict the sworn testimony it gave in the 30b-6 deposition that it wasn't relying on these representations. It's filed a claim that requires it to contradict the representations that its lawyers made during settlement discussions, that it didn't believe the representation. And it's filed a claim that causes it, that requires it to contradict the clear language of the settlement agreement itself and the representation it made in that settlement agreement that it wasn't relying. We asked FMC in a 30b-6 deposition in this case. We said, how do you reconcile that? How is it that you can make all those statements in the lawsuit and now you bring a case saying that you did rely on those representations? And the witness who was designated was the same person who had signed the settlement agreement in the last case. His answer, I don't know. You're asking me how I reconcile it, and I don't know. And the answer is, it's irreconcilable. They are absolutely trying to contradict themselves in this case. And the law does not permit a party to go into court with this kind of duplicity and try and seek relief. Counsel, are you arguing duplicity? Yes. You know, when I used to teach equity in the old days, we had something called unclean hands doctrine. I don't think your clients are exactly lily white here. Clean hands are not. It's FMC that's the one that's coming into court seeking relief. And so the unclean hands doctrine. I'm not suggesting that the equitable doctrine applies. I'm just saying that you were arguing to Judge Ross. Duplicity is not going to go far in favor of your clients, just so you know. You've got to rely on the law. I would say that I think that while there is a dispute over whether our clients told the truth in the first case, there's no dispute that FMC, to win this case, has to prove that it was being duplicitous. So it could be that both parties are duplicitous, but we know one thing, and that's that FMC. One party was duplicitous for sure. We absolutely do. Their case requires them to prove that. Exactly. Now, that Judge Kunauer held, Judge Kunauer rested his holding on the holding that a no-reliance clause, just standing alone, was sufficient to bar FMC's claim as a matter of law. And we agree, we think there's a lot of reasons this court could affirm, but we agree that that standing alone is sufficient. So Judge Kunauer read the second sentence of the integration clause as a separate reliance provision. Yes, Your Honor. The Washington Supreme Court has enforced a no-reliance clause, most recently in the Thomas decision, which is cited in our brief. And the Thomas decision involved a land sale, and the issue there was the plaintiff alleged that the defendant had misrepresented the amount of land that was being conveyed in the sale. The final agreement said that the defendant was making no warranty about, or excuse me, it said that the plaintiff was not relying on any warranty or representation about how much land would be involved in the sale. And the Washington Supreme Court held that by including that in the contract, the plaintiff gave up any right to rely on the representations. It said, if the plaintiff is advised by the final written contract that the seller withdrew all such oral representations and would deal only on the basis of no warranties and no representations, he cannot be permitted to say that he disregarded and ignored its plain terms and relied on oral representations wholly at variance therewith. That's exactly what FNC is trying to do here. It's agreed to a contract where it said it wasn't relying on representations, and now that it doesn't like the deal, and now that PES has competed successfully against it in the years since then. Well, now that Mr. Edwards has come clean, that's basically what prompted all of this because Mr. Edwards' conscience got the better of him, and he told him that they, in fact, had taken the drawings. Your Honor, it was Mr. Waddles. Mr. Waddles, I'm sorry. That's right. And Mr. Waddles and Mr. Edwards had a falling out. Mr. Waddles left the company. It's his honor among thieves. It is an interesting fact situation, Your Honor. Well, does Mr. Edwards deny the Mr. Waddles? My understanding is he does. He denies that. He denies that he had any knowledge of it. Mr. Waddles was responsible in the business for designing and producing the parts. Mr. Edwards was the salesperson and did the business side. So it was really within Mr. Waddles' purview, the design factor. And Mr. Edwards says he doesn't know. Mr. Waddles says, yes, Jim Edwards did now. Okay. All right. So there's a contention between the two of them. That's right. There's a factual dispute. Mr. Edwards has not fessed up. That's right. You can tell where Judge Robinson and I got a lot of our education. In the trenches. I'd like to address the three cases that Mr. Palumbo referred to a few moments ago talking about the fraud vitiates all rule, because they're clearly distinguishable here for a couple reasons. The one reason that's true of all three of them, and it's the Barnett case and the Normyle case and the Dietrich case, is that they all involved unsophisticated parties. The Barnett case was a grocer and his wife. The Normyle case was a divorcee who was suing her husband for fraud. And the Dietrich case was a husband and wife who were farmers. The court went out of its way to say that they were strangers to this land, had no knowledge about what they were contracting about. And I think if you look at the cases interpreting no reliance provisions, both in Washington and nationwide, you'll find that sophistication really is the critical issue. Parties like FMC are, in Judge Posner's words, big boys who can take care of themselves and decide whether or not they're willing to bargain away a fraud claim by saying that they're not relying on any representations. And that's the extra equipamentos case that we cited in our supplemental authority, in which Judge Posner cited approvingly to Judge Kuhnauer's order in this case, actually. So all three of those cases that FMC relies on involved unsophisticated parties. Two of those three cases, the Barnett case and the Normyle case, did not involve no reliance clauses at all. And I think it's important just to define what a no reliance clause is. It's a representation by one party that it's not relying on. It's a contractual representation that it's not relying or it is relying on certain representations. And Barnett and Normyle involved fraud waivers, which are a very different thing. A fraud waiver is when you say, well, even if you did defraud me, I'm going to let you get away with it. A no reliance clause is very different. A no reliance clause says you didn't defraud me because I don't believe you. Or if I do believe you, I'm not relying on that representation. So they're very different types of clauses. Now, the Dietrich case did involve language that is at least arguably a no reliance clause. But as I mentioned, it was unsophisticated parties. And it was also decided before the Thomas decision, which we cite in our briefs, which did enforce a no reliance clause. So to the extent there's a conflict between those two cases, the Thomas decision would govern. I'd also note for the Court that this Court, though not under Washington law, has twice enforced no reliance clauses. Once in the Paracourt decision, in an opinion joined by Judge Fletcher, this Court held that the contractual representation that the plaintiff did not rely on any other person goes far to defeat their present claims that they did precisely the opposite. And then under California law, this Court held that a no reliance clause is a, quote, promise not to rely that necessarily implies that reliance was not justifiable. And in reaching that decision, this Court looked to the principles of California law that contracts are enforced according to their terms, which is the exact principle of law that applies in Washington as well, the objective manifestation theory of contracts. So that decision provides excellent board guidance for this Court as well. Judge, there's also a broader rule. And I think that, Judge Ezra, you asked earlier about whether this ever has no reliance clause has ever come up in the settlement context.   I mean, it's a clause that was decided once before in Washington. And the reason I think that it hasn't other than the one case. Which I think that that case was decided under the principle that it's just no reliance clause or not,  And the Washington Court of Appeals has reached that conclusion twice. It's a sad statement of affairs, isn't it? It is a sad statement. And it comes out of 11th Circuit authority, nothing against the 11th Circuit. But what the Court there said is that it's one thing to say that it's very important to protect the integrity of the litigation process, which there's no question it is. It's a different question whether we're going to allow civil liability to begin to spring, you know, all this sort of satellite litigation to spring out of earlier litigation. Because any time new evidence came to light, a party could simply come forward and say, we would have changed our settlement decision, or the jury would have decided this case differently. And so I think it's critical to the court system that we have some sense of finality. And particularly in a case like this, where you have extremely sophisticated parties, you've had contentious litigation, you've had accusations of lies, and at the end of it, they sit down and they say, let's make a deal. Let's finalize this thing. Let's achieve some finality. And that's what settles cases, is finality. That's what encourages clients to settle cases. And if FMC can get out of that agreement on those facts, when everyone, when they went into it with their eyes open, and where PES had explicitly bargained for finality, it would be a huge blow to finality, and I think it would be a huge blow to settlement. All right. Thank you, counsel. Thank you, Your Honor. We'll give you two minutes for rebuttal. I did check this, Your Honor. Kiyokoski was decided after Judge Kuhnhauer's decision, so it was not considered. And I think it's notable in Kiyokoski that the, and this was a court of appeals, not a Supreme Court decision. It was denied by the Supreme Court. And Kiyokoski felt no need to distinguish the cases that we've cited, which do recognize that fraud vitiates. Well, it was denied by the Supreme Court. Why would they have to distinguish? It was a totally different context. I think that's the point. But if you look at the clause there, it's very specific. My request on this would be, because Kiyokoski was not considered by the district court, it was not briefed by either party. If that case is a concern, we'd like the ability of the parties to submit an additional brief just on Kiyokoski. And then with respect to the Thomas case, that's dealt with in our briefing. We explain why it does not overrule Dietrich. And we explain that the judge who decided Thomas decided Nelson v. Goodrich after that, again recognizing the rule in Dietrich. And finally, with respect to reliance, clearly if this case is remanded, we have to go to a jury and prove every single element of our fraud claim. But they point to evidence, well, they knew this or they knew that. At the end, the people at FMC who were responsible for making this decision said, we believe they did not take our drawings because we can't believe they would engage in such a massive abuse of the discovery system. And PES's own lawyers, looking at the same evidence we were looking at and having a confidential privilege relationship with their clients, said they believed they hadn't taken the drawings. And that clearly is enough for us to say. And you're saying that your clients absolutely believe that. Our clients absolutely believe that. They had complete faith in these people they were serving. They absolutely believe that. They looked at every shred of evidence. They said they didn't believe it. According to opposing counsel, the record reflects that they didn't believe it. I think if you look at the record, we've given the citations. Mr. Smith and Mr. Simone said we believed when everything was in and we looked at all the discovery that was done, there was no evidence in documents, third-party witnesses, no evidence anywhere that they had taken the drawings. We believe that they had not taken the drawings. And we relied upon that in doing this settlement agreement. PES's own lawyers came to the same conclusion. What about the computer evidence? That didn't go away. The computer evidence was – well, there was – it wasn't computer. The computer evidence simply showed a download, and it identified drawings that had been downloaded, but all those drawings were then released. Andy Rudy, who's one of our engineers, looked, compared – remember that the plaintiffs, when they got our discovery request, or before, said their story was we're reverse engineering all this stuff. And so they said we've got to have some drawings to produce. And so they started making hand drawings, copying. They had our hard copy, copying and make hand drawings, and then they'd say we went to such-and-such poultry plant and we reverse engineered this part. What Mr. Rudy said was of all hundreds of parts, there were three or four – actually, it's five or six that he said it would be very difficult to measure the part this precisely in the field. And there was a couple where he said the measurements on the parts are different – the measurement of the part itself is different than our drawings. That wouldn't be a huge red flag? And it was a huge red flag. That's what I thought. And the explanation was, well, because they started going to plants and making these drawings before Mr. Wall was resigned from FMC, the explanation is if he had any questions, he'd come back and check and fix his measurements. And so balanced against this evidence that suggested maybe they stole drawings, we served interrogatory requests, we served requests for production, we served requests for admission, we looked for third parties. There was not one single document, although they had lots of documents in their possession that demonstrated this fraud, not one single document, not a bank record, not an electronic copy, not a hard copy. And when our witnesses looked at it, they said, we've decided we believe they did not settle. And we don't have to prove those beliefs. What we're saying is there is ample evidence in the record for us to take that to the jury. He said they did not settle. You mean they did not steal the documents? Right. And they said, had we believed – Counsel, we understand your argument. You've far exceeded your time. Thank you. Thank you to both counsel. The case is argued and submitted, and we are in recess.
judges: Fletcher, Rawlinson, Ezra